

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Railroad Commission of Texas
Austin, Texas

Gentlemen:                          Opinion No. O-4110
                                    Re: The issuance, in certain par-
                                        ticulars, of specialized motor
                                        carrier certificates under
                                        House Bill 351, Acts of the
                                        47th Legislature.

        Your letter of September 25, 1941, requests a
legal opinion from this department upon the question, ap-
pertaining to House Bill 351 of the 47th Legislature, stated
by you as follows:

        "QUESTION:  Does the Railroad Commission have
        authority under this act to issue Specialized
        Motor Carrier certificates for those commodities
        named in Section 6 to wit:  Livestock, mohair,
        wool, milk, livestock feedstuff, household goods,
        used office furniture and equipment, oilfield
        equipment, timber in its natural state, farm ma-
        chinery and grain only, or does the Railroad Com-
        mission have authority in addition thereto to
        issue Specialized Motor Carrier certificates for
        the transportation of pipe used in the construc-
        tion and maintenance of water lines and pipe
        lines, and in addition all other commodities which
        by reason of length, width, weight, height, size
        and other physical characteristics, require the
        use of special devices, facilities or equipment
        for their loading or unloading and all commodi-
        ties which require special facilities or special
        motor vehicles for adequate, efficient or safe
        transportation as same is set out in Section 1?"

        Your question arises because of the following
provisions of House Bill 351.

        Section 1 of the Act, which constitutes only a
declaration of policy, describes the following commodities:

        ". . . Oil field equipment, household goods,
and used office furniture and equipment, livestock,

milk, livestock feedstuff, grain, farm machinery, timber in its natural state, wool, mohair, pipe used in the construction and maintenance of water lines and pipe lines, and in addition all commodities which by reason of length, width, weight, height, size, or other physical characteristic, require the use of special devices, facilities, or equipment for their loading or unloading, and all commodities which require special facilities or special motor vehicles for adequate, efficient, or safe transportation;  . . ."

Section 2 of the Act adds paragraph (i) to Section 1 of the original Motor Carrier Act, as amended, and consists of a detailed definition of the term "specialized motor carrier." Paragraph (i) reads:

"'(i)  "Specialized motor carrier" means any person owning, controlling, managing, operating, or causing to be operated any motor-propelled vehicle used in transporting, over any public highway in this State, over irregular routes on irregular schedules, for compensation and for the general public with specialized equipment, property requiring specialized equipment in the transportation and handling thereof; provided, that the term "specialized motor carrier" as used in this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns; and, provided further the term "specialized motor carrier" as used herein shall include those carriers who engage or desire to engage exclusively in the transportation of livestock, livestock feedstuff, grain, farm machinery, timber in its natural state, milk, wool, mohair, or property requiring specialized equipment as that term is hereinafter defined, or any one, or more, of the foregoing named commodities.

"'For the purpose of this Act, the term "specialized equipment" includes, but is not limited to block and tackle, hoists, cranes, windlasses, gin poles, winches, special motor vehicles, and such other devices as are necessary for the safe and proper loading or unloading of property requiring specialized equipment for the transportation and handling thereof.

"'For the purpose of this Act, the term "property requiring specialized equipment" is limited to (1) oil field equipment, (2) household goods and used office furniture and equipment, (3) pipe used in the construction and maintenance of water lines and pipe lines, and (4) commodities which by reason of length, width, weight, height, size, or other physical characteristic require the use of special devices, facilities, or equipment for their loading, unloading, and transportation.

"'For the purpose of this Act, the term "oil field equipment" means and includes machinery, materials, and equipment incidental to or used in the construction, operation, and maintenance of facilities which are used for the discovery, production, and processing of natural gas and petroleum, and such machinery, materials, and equipment when used in the construction and maintenance of pipe lines.'"

Section 3 of House Bill 351 amends Section 6 (d) of Chapter 277, Acts of the 42nd Legislature, as amended by Chapter 321, Acts of the 45th Legislature (Article 911b, Section 6, Subsection (d), V.A.C.S.). It amends Section 6 (d) to read, in part, as follows:

"The Railroad Commission is hereby given authority to issue upon application to those persons who desire to engage in the business of transporting for hire over the highways of this State livestock, mohair, wool, milk, livestock feedstuff, household goods, used office furniture and equipment, oil field equipment, timber in its natural state, farm machinery and grain, 'Specialized Motor Carrier' certificates when it is shown by substantial evidence that there exists (1) a public necessity for such service, and that (2) public convenience will be promoted by the granting of said application."

It appears that Section 3 of House Bill 351, in amending Section 6 (d), does not include within its enumeration of commodities certain ones which are included within

Railroad Commission of Texas, Page 4

the description contained in Section 1 of the Act and in the definition contained in Section 2 of the Act. Hence your question.

Section 4 of the Act amends the motor carrier law by adding Section 5a thereto. Section 5a, among other things, provides:

"'Section 5a. (a) The Commission is hereby given authority to issue upon application and hearing as provided in this Act, to those persons who desire to engage in the business of a "specialized motor carrier", certificates of convenience and necessity in the manner and under the terms and conditions as provided in this Act.

"'. . . .

"'(b) No motor carrier shall transport oil field equipment, household goods, used office furniture and equipment, livestock, milk, livestock feedstuff, grain, farm machinery, timber in its natural state, wool or mohair, on any highway in this State unless there is in force with respect to such carrier and such carrier is owner or lessee of a certificate of convenience and necessity issued pursuant to a finding and containing a declaration that a necessity requires such operation or a contract carrier permit issued by the Commission, authorizing the transportation of such commodity or commodities; * * *

"'(c) The Commission shall have no jurisdiction to consider, set for hearing, hear, or determine any application for a certificate of convenience and necessity authorizing the operation as a "specialized motor carrier" or any other common carrier except as provided in the preceding paragraph unless the application shall be in writing and set forth in detail the following facts: (The requirements follow)

"'* * *

Railroad Commission of Texas, Page 5

"'(d)  Before any such application shall be
granted, the Commission shall hear, consider and
determine said application in accordance with
Sections 8, 9, 11, 12, 13, 13a, 14 and 15 of Chap-
ter 277, Acts of the Forty-first Legislature,
Regular Session, as amended (Art. 911b, Revised
Civil Statutes of the State of Texas, 1925, as
amended) * * *."

Subsections (e), (f), (g) and (h) of Section 5a
prescribe other regulations not pertinent to the question
at hand.

It is at once manifest that Section 5a, added by
Section 4 of House Bill No. 351, when read in connection
with Section 1 and Section 2, the latter adding paragraph
(i), authorizes the Commission to issue specialized motor
carrier certificates for the transportation of the additional
commodities in question.  And no difficulty would arise re-
garding this authority of the Commission were only these
several provisions involved.

We have only to decide if the amendment to Sec-
tion 6(d), effected by Section 3 of House Bill 351, repre-
sents a limitation upon the other parts of the Act in this
respect.  In our opinion it does not.

Two underlying purposes are apparent in House Bill
351.  One to create a new class of carriers, designated as
specialized motor carriers, to engage in the business of
transporting certain described commodities, the other to
deal with special commodity carriers having their origin
and rights in Section 6(d) of the motor carrier act.

True to its underlying purposes, House Bill 351
contains provisions, first, creating and regulating special-
ized motor carriers as a new subject of legislation apper-
taining not only to the commodities formerly the subject of
special regulation in old Section 6(d) but others in addition
thereto, viz, pipe used in the construction and maintenance
of water lines and pipe lines and other commodities which by
reason of length, width, weight, height, size, and other phy-
sical characteristics require the use of special devices,
facilities or equipment; and, second, provisions specifically
amending old Section 6(d) and bringing the subject matter

thereof within the new requirements, as well as other provisions treating of the permits formerly issued under old Section 6(d).

The amendment to Section 6(d) describes only the commodities originally enumerated in Section 6(d) as to which special commodity permits had been issued. The amendment simply demonstrates, and effects, the legislative intent that the commodities described, formerly regulated under the old law, should henceforth be subject to the additional regulations consistent with the fundamental purpose of House Bill 351. This is further indicated by the quoted provision of Section 5a(b) as added by Section 4 of House Bill 351.

There is much duplication and repetition in House Bill 351. Numerous of its provisions are unnecessary to achieve the purposes of the act in the particulars under consideration. The fact of this duplication, however, cannot be given the effect of defeating its purposes. That the restricted subject matter of the amendment to Section 6(d) is covered by and included within the larger subject matter of Section 2 and Section 4 does not militate against our conclusion. There is obviously no more reason to consider the amendment to Section 6(d) as a limitation upon the act itself than to conclude, insofar as the subject under consideration is concerned, that the amendment to Section 6(d) may be entirely disregarded.

You are therefore advised that it is the opinion of this department, in specific answer to the question which you have propounded, that the Railroad Commission does have authority under House Bill 351 not only to issue specialized motor carrier certificates for the commodities named in Section 6(d), as amended, but also, in addition thereto, for the transportation of pipe used in the construction and maintenance of water lines and pipe lines, and other commodities which by reason of length, width, weight, height, size and other physical characteristics, require the use of special devices, facilities or equipment for their loading or unloading, and commodities which require special facilities or special motor vehicles for adequate, efficient or safe transportation, as defined in paragraph (i) as added by Section 2 of House Bill 351.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Zollie C. Steakley
Assistant

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN

APPROVED OPINION

ATTORNEY GENERAL

ZCS:mp